IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| SABRINA RUSHTON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 117-171 |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |

**O R D E R**

Before the Court is Defendant United States of America's ("United States") motion to dismiss Plaintiff's amended complaint.[1] (Doc. 10.) For the reasons set forth below, Defendant's motion is **GRANTED**.

**I. BACKGROUND**[2]

"Plaintiff is/was a patient at the Charlie Norwood VA Center" in Augusta, Georgia. (Am. Compl., Doc. 5, ¶¶ 13, 15.)

---

[1] On February 9, 2018, then-defendant David J. Shulkin, then-Secretary of the Department of Veterans Affairs, filed a similar motion to dismiss in regards to Plaintiff's initial complaint filed December 11, 2017. (Doc. 4; see also Doc. 1.) Plaintiff subsequently filed an amended complaint as well as a motion requesting leave to amend her initial complaint. (Docs. 5, 8.) Because she filed her amended complaint within 21 days of the service of Secretary Shulkin's motion to dismiss, however, Plaintiff was entitled to amend her complaint as a matter of right and her motion seeking leave to amend was superfluous. See FED. R. CIV. P. 15(a)(1)(B). Accordingly, Plaintiff's motion for leave to amend her complaint (doc. 8) is **DENIED AS MOOT**. Further, the United States concedes in its present motion to dismiss that the filing of the amended complaint mooted Secretary Shulkin's motion to dismiss. (See Doc. 10, at 1 n.1.) Accordingly, Secretary Shulkin's motion to dismiss (doc. 4) is also **DENIED AS MOOT**.

[2] When reviewing a Rule 12(b)(6) motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. See Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

Plaintiff was treated by Dr. Adrien Nelson, a psychiatrist employed by the United States Department of Veterans Affairs at the Charlie Norwood VA Center. (Id. ¶¶ 14-15.) "On or about August 12, 2014, Plaintiff was sexually harassed by . . . [Dr. Nelson,] who was phoning her for dates and following her around in the grocery store." (Id. ¶ 29.) Plaintiff asserts that the United States "has vicarious liability for the acts" – and was negligent in the supervision and retention – of Dr. Nelson. (Id. ¶¶ 18-20.)

On November 3, 2014, Plaintiff filed an administrative tort claim with the Department of Veterans Affairs regarding Dr. Nelson's conduct. (Id. ¶ 9.) On November 13, 2015, the Department of Veterans Affairs denied Plaintiff's administrative tort claim. (Id. ¶¶ 10; see also Doc. 9-2 (denial letter dated November 13, 2015).) On April 20, 2016, Plaintiff moved for reconsideration of the denial of her administrative tort claim. (Id. ¶ 11.) On June 16, 2017, the Department of Veterans Affairs confirmed its denial of Plaintiff's administrative tort claim. (Id. ¶ 12; see also Doc. 5-1 (denial letter dated June 16, 2017).)

On December 11, 2017, Plaintiff filed her initial complaint in this Court, in which she named David J. Shulkin, then-Secretary of the Department of Veterans Affairs, as the only defendant. (See Doc. 1.) On February 9, 2018, Secretary

Shulkin moved to dismiss Plaintiff's initial complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6). (Doc. 4.) On February 20, 2018, Plaintiff filed her amended complaint, in which she named the United States as the only defendant. (Doc. 5.) On March 1, 2018, the United States moved to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(1) & (6). (Doc. 10.)

## II. LEGAL STANDARD

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009) (citations omitted). "Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint[; w]hen considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." Id. (citations omitted). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." Id. (citations omitted). Here, the United States' assertion that this Court lacks subject-matter jurisdiction over this action is based solely on the allegations in Plaintiff's amended complaint and thus its jurisdictional challenge is facial. Thus, for the purposes of this Order, the Court has accepted as true all facts

3

alleged in the amended complaint and construed all reasonable inferences in the light most favorable to Plaintiff. See Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). Nevertheless, Plaintiff, as the party invoking the Court's jurisdiction, "bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).

### III. DISCUSSION

"[T]he United States, as a sovereign entity, is immune from suit unless it consents to be sued." Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015) (citations omitted). "Through the enactment of the [Federal Tort Claims Act ("FTCA")], the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." Id. (citations omitted); see also id. at 1323 ("The FTCA was enacted to provide redress to injured individuals for ordinary torts recognized by state law but committed by federal employees." (citations omitted)). "But in offering its consent to be sued, the United States has the power to condition a waiver of its immunity as broadly or narrowly as it wishes, and according to whatever terms it chooses to impose." Id. at 1321-22 (citations omitted). "That being so, a court must strictly observe the limitations and conditions upon which the [United

4

States] consents to be sued and cannot imply exceptions not present within the terms of the waiver." Id. at 1322 (citations omitted). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the [United States], the court lacks subject matter jurisdiction over the suit." Id. (citations omitted). Where an exception exists that "neutralize[s] what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." Id. ("These exceptions must be strictly construed in favor of the United States . . . ." (internal quotations and citations omitted)).

"Any plaintiff seeking to sue the United States under the FTCA must satisfy two initial statutory burdens to establish jurisdiction," namely identifying: (1) "an explicit statutory grant of subject matter jurisdiction, which in the case of the FTCA is 28 U.S.C. § 1346(b)(1);" and (2) "a statute that waives [the United States'] sovereign immunity[, which in the case of the FTCA] is provided in chapter 171 of Title 28, which chapter includes §§ 2671-2680." Id. (citations omitted). Notably, 28 U.S.C. § 1346(b)(1) only provides federal courts with jurisdiction over torts committed by federal employees "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of

5

the place where the act or omission occurred." See 28 U.S.C. § 1346(b)(1). "State law, therefore, governs the question of whether the United States has waived its sovereign immunity against liability for the acts complained of by the plaintiff." Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990) (citations omitted); see also Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 899 n.3 (11th Cir. 2007) ("Liability in an FTCA action is determined in accordance with the law of the place where the government's act or omission occurred . . . ." (citations omitted)). Because all relevant tortious acts – and tortious injuries resulting therefrom – are alleged to have occurred in Georgia, the Court looks to Georgia law to determine the United States' liability. See Besada v. U.S. Citizenship & Immigration Servs., 645 F. App'x 879, 880 (11th Cir. 2016) ("To state a claim under the FTCA, a plaintiff must allege a violation of state law by an employee of the federal government acting within the scope of his employment." (citing Zelaya, 781 F.3d at 1323-24)).

**A. Vicarious Liability/Respondeat Superior**

In Georgia, "[a]n employer is liable for negligent or intentional torts committed by an employee only if the torts were committed in furtherance of, and within the scope of, the employer's business." Hendrix v. Snow, 170 F. App'x 68, 82 (11th Cir. 2006) (citing Piedmont Hosp., Inc. v. Palladino, 580

6

S.E.2d 215, 217 (Ga. 2003)); see also Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996) ("The question of whether an employee's conduct was within the scope of his employment is governed by the law of the state where the incident occurred." (internal quotations and citations omitted)). "Stated another way, if the employee was authorized to accomplish the purpose in pursuance of which the tort was committed, the employer is liable." Chorey, Taylor & Feil, P.C. v. Clark, 539 S.E.2d 139, 140 (Ga. 2000) (citations omitted). Conversely, "an employer cannot be held liable [in Georgia] on the basis of *respondeat superior* if the employee's acts (1) were committed for purely personal reasons associated solely with the employee's own gratification, and (2) were entirely disconnected from the scope of the employee's employment." Hendrix, 170 F. App'x at 82 (citing Palladino, 580 S.E.2d at 217); see also Palladino, 580 S.E.2d at 217 ("Under Georgia law, if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable." (internal quotations and citations omitted)).

Here, Plaintiff seeks to hold the United States vicariously liable for the actions of Dr. Nelson in "sexually harass[ing]" Plaintiff by "phoning her for dates and following her around in the grocery store" on or about August 12, 2014. (Am. Compl. ¶

7

29.) Yet "it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee" because "these types of torts, being purely personal in nature, are unrelated to the employee's duties and, therefore, are outside the scope of employment because they were not in furtherance of the master's business."[3] Alpharetta First United Methodist Church v. Stewart, 472 S.E.2d 532, 535-36 (Ga. Ct. App. 1996) (citations omitted). Further, Plaintiff has alleged no facts that would indicate that Dr. Nelson's alleged tortious conduct was committed in furtherance - or within the scope - of his employment. See Hendrix, 170 F. App'x at 82; Palladino, 580 S.E.2d at 217. Nor has she alleged that Defendant authorized Dr. Nelson to accomplish the purpose in pursuance of which he committed his alleged tortious acts or otherwise authorized him

---

[3] See, e.g., Palladino, 580 S.E.2d at 217 (hospital not vicariously liable for employee's improper fondling of in-patient's genitals or attempts to perform oral sex thereon, despite being authorized to inspect the in-patient's groin, to clean the area, and to move the in-patient's testicles if necessary to perform these tasks, because "[a]t that point, [the employee] was acting not as a hospital employee, but rather purely for his own personal reasons"); Stewart, 472 S.E.2d at 533-36 (despite minister's "manipulation of the transference phenomenon," church not vicariously liable for minister's nonconsensual sexual encounters with a church member he was counselling because such behavior "is not a part of, or in any way incidental to, a minister's duties and responsibilities"); Rogers v. Carmike Cinemas, Inc., 439 S.E.2d 663, 665 (Ga. Ct. App. 1993) (employer not vicariously liable for sexual harassment of employee by company officers and employees "since the harassment was not committed in the furtherance of [the employer's] business"); Mountain v. S. Bell Tel. & Tel. Co., 421 S.E.2d 284, 285 (Ga. Ct. App. 1992) (employer not vicariously liable for rape committed by employee during in-home installation because the "rape was not related to [the employee's] employment and did not further [the employer's] business" and "[t]he mere fact that the assault occurred during a time of ostensible employment in the [victim's] home is not dispositive on the question of scope of employment"); B.C.B. Co., Inc. v. Troutman, 409 S.E.2d 218, 219 (Ga. Ct. App. 1991) (employer not vicariously liable for sexual harassment of employee by supervisor because acts of sexual harassment were not committed by the supervisor in furtherance of the employer's business).

to engage in identical behavior. See <u>Doe v. Fulton-DeKalb Hosp. Auth.</u>, 628 F.3d 1325, 1334-35 (11th Cir. 2010) ("[W]hen the allegedly tortious behavior is identical to behavior authorized by the employer – i.e., observing women in the restroom using a hidden camera installed by the employer – a question of fact remains whether the employee is acting within the scope of his employment. But because [the employer] did not mandate the behavior complained of and [the employee] abused his authority to pursue his own sexual agenda, we conclude that his conduct was analogous to that of the employee in <u>Palladino</u> and therefore outside the scope of his employment."); <u>Clark</u>, 539 S.E.2d at 140. Because Plaintiff has failed to allege facts under which Georgia law would hold that Dr. Nelson's complained-of conduct was within the scope of his employment, she has failed to carry her burden to demonstrate that this Court has subject matter jurisdiction over her respondeat superior claim.

Further, while Plaintiff has attempted to recast her alleged sexual harassment by Dr. Nelson as a professional malpractice claim, "[i]t is the substance of the claim and not the language used in stating it which controls." See <u>Gaudet v. United States</u>, 517 F.2d 1034, 1035 (5th Cir. 1975) (citations omitted). For example, Plaintiff cites <u>St. Paul Fire & Marine Ins. Co. v. Mitchell</u>, 296 S.E.2d 126, 127 (Ga. Ct. App. 1982) for the proposition that "Georgia has recognized the negligent

9

allegation against a psychiatrist for violating the boundary limitations to his profession as viable." (Doc. 11, at 5.) Yet even ignoring that this argument does not address the issue at hand,[4] the Georgia Court of Appeal's holding in Mitchell is not so expansive; rather, as noted by the Georgia Court of Appeals in a subsequent decision, "Mitchell specifically dealt with a psychiatrist's improper manipulation of the transference phenomenon" and whether such manipulation could constitute the performance of "professional services" in the context of an insurance coverage dispute. See St. Paul Fire & Marine Ins. Co. v. Alderman, 455 S.E.2d 852, 854 (Ga. Ct. App. 1995). Indeed, in Alderman, the Georgia Court of Appeals concluded that a doctor was not providing "professional services" when he improperly fondled his patient's vagina and breasts during an otherwise routine examination; rather, that Court concluded that such actions did not constitute medical treatment, "in no way involved the application of any specialized learning or skills," and were performed "solely for the satisfaction of [the doctor's] own prurient interests." Id. Here, Plaintiff does not allege that Dr. Nelson manipulated the transference phenomenon when he "phon[ed] her for dates and follow[ed] her around in the grocery store" on or about August 12, 2014. (See Am. Compl. ¶ 29.) Indeed, Plaintiff does not even allege that

---

[4] *i.e.*, whether sexual misconduct committed by an employee, even if such misconduct constitutes professional malpractice, can be considered within the scope of the employee's office or employment.

the transference phenomenon was at play – let alone that Dr. Nelson improperly manipulated that phenomenon – during these interactions; rather, she only alleges that "[t]heraputic relationships, *like* the one between Plaintiff and Dr. Nelson create a power inequality, transference, *and/or* dependence which render patients, *like* the Plaintiff, vulnerable." (Am. Compl. ¶ 27 (emphasis added); <u>see</u> <u>also</u> <u>id.</u> ¶¶ 30-32 ("Dr. Nelson following the Plaintiff in the grocery store was a violation of the standard of care. Dr. Nelson phoning the Plaintiff, his patient, for dates was a violation of the standard of care. Dr. Nelson was negligent in deviating from the standard of care when he committed the alleged acts against the Plaintiff.").) Nevertheless, even if Plaintiff had pled that Dr. Nelson manipulated the transference phenomenon and thereby committed professional malpractice under Georgia law, it would not necessarily follow that such professional malpractice was within the scope of his employment such that the United States is vicariously liable therefor. Accordingly, even assuming *arguendo* that Georgia law would categorize Dr. Nelson's alleged sexual harassment of Plaintiff as professional malpractice, Plaintiff has failed to demonstrate that such professional malpractice fell "within the scope of his office or employment" at the Charlie Norwood VA Medical Center under Georgia law. <u>See</u> 28 U.S.C. § 1346(b)(1). Therefore, the Court is without subject

matter jurisdiction over Plaintiff's vicarious liability claim against the United States.

**B. Negligent Supervision/Retention**

Plaintiff also seeks to hold the United States liable by alleging that it was negligent in its supervision/retention of Dr. Nelson. (See Am. Compl. ¶¶ 19-24.) Several Circuit Courts have considered such negligent supervision/retention claims, where they arise solely from a tortfeasor-employee's employment status, to be nothing more than "disguised" *respondeat superior* claims. See, e.g., Glade ex rel. Lundskow v. United States, 692 F.3d 718, 724 (7th Cir. 2012) (collecting cases). Indeed, the Third Circuit has held that "plaintiffs under the FTCA cannot use a negligent supervision [or retention] claim to circumvent the scope-of-employment condition of § 1346(b)(1)." See CNA v. United States, 535 F.3d 132, 147-49 (3d Cir. 2008). Rather, the Third Circuit requires a plaintiff to "allege truly independent negligence, analogous to the naval-base safety regulations and 'voluntary undertaking to provide care to a person who was visibly drunk' that were at issue in Sheridan."[5] Id. (quoting Sheridan v. United States, 487 U.S. 392, 401 (1988)). The

---

[5] "Independent negligence in this context means negligence irrespective of an employment relationship." CNA, 535 F.3d at 149 (citing Sheridan, 487 U.S. at 397-98). "Negligent supervision claims . . ., on the other hand, are rooted in supervisor-supervisee relationships at work; they relate closely to the supervisee's . . . employment status." Id. (footnote omitted) ("Unlike the corpsmen in Sheridan, whose alleged negligence had nothing to do with the drunk serviceman's employment relationship with the Navy, Albrecht's allegedly negligent supervision of Lewis had everything to do with Lewis's employment relationship with the Army. Albrecht's only alleged connection to the shooting results from Lewis's status as his subordinate.").

Eleventh Circuit - at least in the context of the intentional tort exception to the United States waiver of sovereign immunity, 28 U.S.C. § 2680(h) - appears to have adopted this "independent negligence" requirement. See Alvarez v. United States, 862 F.3d 1297, 1307-10 (11th Cir. 2017).

Here, Plaintiff has failed to identify - and the Court is unable to discern - any reason why the "independent negligence" requirement adopted by the Eleventh Circuit in Alvarez would be inapplicable to Plaintiff's present negligent supervision and retention claims. Further, the Court concludes that - as pled in her amended complaint - Plaintiff's negligent supervison/retention claims are "rooted in supervisor-supervisee relationships at work" alone and therefore are closely related to Dr. Nelson's employment status.[6] See id. at 1310. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's negligent supervision/retention claims because they are not sufficiently "independent" from the underlying claim upon which they are based and for which this Court also lacks subject matter jurisdiction. See id.; CNA, 535 F.3d at 149. Nevertheless, even assuming *arguendo* that the Court does have

---

[6] While Plaintiff has conclusorily alleged that the "Charlie Norwood VA Medical Center owed Plaintiff a duty of care" (Am. Compl. ¶ 26), she has failed to define the contours of that duty - let alone demonstrate that undefined duty to be antecedent and independent of Dr. Nelson's employment status. Moreover, even if she had demonstrated an independent duty the United States owed her, Plaintiff has failed to allege any breach of that independent duty; rather, the only connection by the United States to the alleged breaches results from Dr. Nelson's status as a government employee. See CNA, 535 F.3d at 149.

13

subject matter jurisdiction over Plaintiff's negligent supervision/retention claims, they would still be subject to dismissal for failure to state a claim upon which relief can be granted.[7] See, e.g., Chartis Ins. Co. of Canada v. Freeman, 2013 WL 12121864, at *4 (S.D. Ga. Mar. 18, 2013). Accordingly, Plaintiff's negligent supervision/retention claims are also due to be dismissed.

---

[7] "Under Georgia law, liability for negligent hiring or retention requires evidence that the employer knew or should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury." Guthrie v. Waffle House, Inc., 460 F. App'x 803, 808-09 (11th Cir. 2012) (quoting Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1247 (11th Cir. 2001)). Similarly, "[a]n employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Id. at 809 (quoting Leo v. Waffle House, Inc., 681 S.E.2d 258, 262 (Ga. Ct. App. 2009)). "Although the Court must assume the truth of the factual allegations in the Complaint, it should not assume the truth of bare legal conclusions." See Freeman, 2013 WL 12121864, at *4 (citing S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 409 n.10 (11th Cir. 1996) ("As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss.")). Here, Plaintiff's bare allegations that Dr. Nelson "displayed a tendency" to violate the relevant standard of care and sexually harass females and that the Charlie Norwood VA Medical Center "knew or should have known" of Dr. Nelson's "propensity" to engage in said conduct (Am. Compl. ¶¶ 19-22) are nothing more than formulaic recitations of the elements of a negligent supervision/retention claim; these legal conclusions, masquerading as facts, are not entitled to the assumption of truth and are insufficient to survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)); Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309-10 (Ga. 2011) (finding that allegations merely alleging that defendants "knew or should have known" of the tortious conduct were legal conclusions). Accordingly, Plaintiff's amended complaint lacks any factual allegations from which a trier of fact could reasonably infer that the United States knew or should have known of Dr. Nelson's purported tendency to sexually harass his patients or otherwise breach his professional duties and therefore such claims are subject to dismissal for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Upon the foregoing and due consideration, **IT IS HEREBY ORDERED** that the United States' motion to dismiss (doc. 10) is **GRANTED** and Plaintiff's claims are hereby **DISMISSED** for lack of subject-matter jurisdiction. The Clerk is directed to **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of June, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA